UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

KENNETH MICHAEL BROWN,

                Plaintiff,

v.

D.J. MEEHAN and
C.E. JOHNSON

                Defendants.

Civil Action No. 3:14-CV-442

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Quash Subpoena Duces Tecum ("Motion") (ECF No. 10), filed by the Virginia Department of State Police ("VSP"). Specifically, VSP requests that Request Nos. 1 and 5 be quashed. Plaintiff filed a Memorandum in Opposition on September 5, 2014 ("Opp'n Mem.") (ECF No. 13). VSP did not file a reply memorandum. A hearing was held on September 22, 2014. For the reasons set forth below, the Motion is DENIED.

### I. FACTUAL BACKGROUND

This case involves injuries sustained by Plaintiff, Kenneth Michael Brown ("Brown"), during an arrest made by Virginia State Police troopers, C.E. Johnson ("Johnson") and D.J. Meehan ("Meehan"). Brown had previously been convicted of a felony, to wit unauthorized use of a motor vehicle, on April 12, 1977. On August 2, 2004, then Governor Mark Warner restored Brown's civil rights, and on July 7, 2006, the Honorable Lee A. Harris, of the Henrico Circuit Court, entered an Order restoring Brown's right to possess firearms.

On October 12, 2012, Brown was lawfully transporting a firearm in plain view on the front passenger seat of his vehicle on his way to work. As he was driving west on Interstate 64 in Henrico County, he was pulled over by Meehan for speeding. When Meehan saw the firearm he

confirmed that it was the only one in the car and then seized the weapon. Meehan directed Brown to get out of his vehicle and place his hands on the hood while he was subjected to a pat down search. After running Brown's license and registration, Meehan returned to the vehicle and ordered Brown out of his vehicle again. Meehan then handcuffed Brown, at which time Brown heard his left arm pop and experienced great pain. Brown advised Meehan that he was injured, and also advised him that he recently had two cervical spine surgeries.

Brown asked why he was being handcuffed and Meehan advised that as a convicted felon, Brown could not legally possess and carry a firearm. Brown tried to explain that his rights had been restored and he had proof in the form of a Henrico Circuit Court order located in the glove compartment of his vehicle. However, Meehan would not allow Brown to produce this documentation.

Shortly thereafter, Johnson arrived at the scene and he also refused to allow Brown to secure this documentation. The two Defendants then placed Brown into the police car.

After insisting that he was injured, Meehan and Johnson agreed to request an ambulance. When the paramedics arrived, Brown's handcuffs were removed, revealing bruising, welting and discoloration on his wrists and hands. Brown was then transported to St. Mary's Hospital where he was treated for pain and numbness in his neck and left arm. After he was discharged, Brown's complaints continued and he was later diagnosed with a left rotator cuff tear, which required surgery on January 10, 2013.

Brown was not able to return to work full-time until July 29, 2013. His previous job position as an electrician was no longer available and he instead took a position at a temporary agency, working the night shift at a significant reduction in pay.

On June 28, 2014, Brown filed a 7-count complaint against Meehan and Johnson alleging, *inter alia*, excessive force and false arrest under 42 U.S.C. § 1983. On July 28, 2014, Brown issued to VSP a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises pursuant to Rule 45. Specifically, Request No. 1 demands:

> All documents that refer or relate to any internal investigation conducted by you into the events surrounding the Traffic Stop, including without limitation any statements made by Plaintiff, Defendants, or any other person; any reports generated; any evidence reviewed; and any Communications related to the investigation.

Request No. 5 demands:

> The complete personnel file of each Defendant, including without limitation all records of training received, discipline administered, promotions received, compensation history, and any and all complaints made against either defendant.

VSP has admitted that it conducted an internal investigation of this incident. Brown made a statement to the VSP in connection with that incident. Based on information and belief, Meehan and Johnson made statements as well. Brown also believes that VSP is in possession of a narrative report stating the results of this investigation.

## II. <u>LEGAL STANDARDS</u>

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26, a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" up to and including "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c). A court must also limit the frequency or extent of discovery otherwise allowed by the rules if it determines that "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" or that "the burden or expense of the proposed discovery outweighs its likely benefit. . . " Fed. R. Civ. P. 26(b)(2)(C).

Rule 45 governs subpoenas to nonparties and permits the same scope of discovery as Rule 26. *See* Fed. R. Civ. P. 45 advisory committee's notes on 1991 Amendment, subdivision (a)("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34," which governs the production of documents requested under Rule 26.) Under Rule 45, the clerk must issue a subpoena to a party who requests it, but "[a]n attorney also may issue and sign a subpoena if the

attorney is authorized to practice in the issuing court." Fed. R. Civ. P. 45(a)(3). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "[W]hen conducting an analysis under Rule 45, the Court is required to apply the balancing standards: relevance, need, confidentiality, and harm." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 1:11MC63, 2012 U.S. Dist. LEXIS 84144, at *5 (M.D.N.C. June 18, 2012); *Snoznik v. Jeld-Wen, Inc.*, 259 F.R.D. 217, 222 (W.D.N.C. 2009) (identifying relevance, need, confidentiality, and harm as the applicable balancing standards).

Rule 45 further provides that upon a timely motion, the issuing court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person . . . ; (iii) **requires disclosure of privileged or other protected matter**, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). A person who withholds subpoenaed information based on a claim that it is privileged bears the burden of proof to expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(ii). In a § 1983 action, "a claim that relevant evidence is privileged 'must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Spell v. McDaniel*, 591 F. Supp. 1090, 1116 (E.D.N.C. 1984) (citation omitted).

### III. <u>DISCUSSION</u>

#### A. Parties' Arguments

VSP argues that the production of the information sought in Document Request Nos. 1 and 5 will require the disclosure of confidential files related to a criminal investigation. VSP asserts both a qualified privilege, which protects disclosure of information contained in criminal

4

investigations, and an executive privilege, which would allow the government to prevent disclosure of certain information whose disclosure would be contrary to the public interest. VSP argues that disclosure of its confidential, internal investigative materials would not only cause a "chilling effect" on law enforcement's ability to conduct efficient internal investigations, but would also violate the officers' right against self-incrimination.

In response, Brown argues that the requested documents are highly relevant, non-privileged evidence that he is entitled to obtain. Brown argues that the executive privilege does not apply to this internal affairs investigation because the documents did not result from a deliberative process. Brown also argues that VSP's claim of "qualified privilege" fails because this privilege is only recognized in ongoing investigations, and all indications in the present case point to the conclusion that the investigation has been completed.

### B. Analysis

    *i.*   *The Internal Affairs Investigation is Not Privileged*

        *a. Executive Privilege ("Deliberative Process Privilege")*

The "executive privilege is the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." *Spell*, 591 F. Supp. at 1115. This privilege is intended to protect the deliberative governmental decisionmaking process, including insulating against the chilling effect that would likely result if officials were "judged not on the basis of their final decisions, but 'for matters they considered before making up their minds.'" *City of Va. Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) (citation omitted); *see also Greene v. Thalhimer's Dep't Store*, 93 F.R.D. 657, 659 (E.D. Va. 1982); *Christian Coalition Int'l v. U.S.*, No. 2:01-cv-377, 2002 WL 1482523, at *1 (E.D. Va. May 31, 2002). The defense of executive privilege is not an absolute defense; rather, it must be demonstrated on a case-by-case basis by balancing the damage to the executive department or the public interest and the potential harm to the plaintiffs from nondisclosure. *Spell*, 591 F. Supp. at 1116. This balancing test requires discussion of a number of competing factors. The

Court in *Frankenhauser v. Rizzo* outlined ten factors that should be examined in the context of discovery of police investigation files in a civil rights case:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

59 F.R.D. 339, 344 (E.D.Pa. 1973).

Additionally, to invoke the executive privilege a party must also show that the documents sought are both predecisional and deliberative. *City of Va. Beach, Va.*, 995 F.2d at 1253; *Huthnance v. District of Columbia*, 268 F.R.D. 120, 122–23 (D.D.C. 2010). "Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *City of Va. Beach, Va.*, 995 F.2d at 1253 (citation omitted). "Deliberative material 'reflects the give-and-take of the consultative process,' by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* (internal citation omitted). In other words, the "executive privilege shields from disclosure 'intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Greene*, 93 F.R.D. at 659 (citation omitted). The privilege does not, however, protect factual materials. *Id.* at 659–60 (citations omitted) ("An agency must produce 'compiled factual material or purely factual material contained in deliberative memoranda and severable from its context.'"); *Elliott v. Webb*, 93 F.R.D. 293, 297 (D. Idaho 1983) ("The records of the police department's internal investigation of defendants is properly discoverable. However, disclosure of those records is limited to factual data.").

In this case, VSP has failed to meets its heavy burden of proving an executive privilege. VSP has not provided any evidence that the documents sought involve any "consultative process" or policy issues. In fact, VSP did not even address the issue that the privilege applies only to documents that are predecisional and deliberative. Therefore, the Court finds the executive privilege inapplicable in this context.

### b. *Qualified Privilege*

The qualified privilege provides protection of files related to ongoing criminal investigations. *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); *see also Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980); *Jabara v. Kelley*, 75 F.R.D. 475, 493 (E.D. Mich. 1977). This privilege "permits the court to balance the interests of the litigant seeking the information against the government's interest in nondisclosure." *Sirmans*, 86 F.R.D at 495. As Brown highlights, all the cases cited in VSP's Motion in support of its argument for a qualified privilege only relate to *ongoing* investigations. Opp'n Mot. 11; *In re Matter of Eisenburg*, 654 F.2d 1107, 1110 n.5 (5th Cir. 1981); *Frankenhauser*, 59 F.R.D. at 343–44 ("[T]he great majority of cases that have considered the discoverability of law enforcement investigations have held that in general such discovery should be barred in ongoing investigations, but should be permitted when investigation and prosecution have been completed, and . . . in some instances, under the balancing test, discovery might be justified despite the ongoing nature of the investigation.")

With this in mind, VSP has failed to fulfill its burden of proving the applicability of a qualified privilege. VSP has not provided any evidence or argument that the documents requested relate to an ongoing investigation. Therefore, because the requested documents are not privileged, the Motion is DENIED.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, VSP's Motion is DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

7

An appropriate Order will issue.

/s/
James R. Spencer
Senior U. S. District Judge

ENTERED this 22ⁿᵈ day of September 2014.